IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KEITH F. BELL, PH.D., ) | |
| ) | |
|     Plaintiff, ) | |
| v. ) | Civil Action No. 6:20CV00001 |
| ) | |
| LIBERTY UNIVERSITY, INC., ) | |
| ) | |
|     Defendant. ) | |

## LIBERTY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Liberty University, Inc. ("Liberty") respectfully submits this Memorandum in Support of its Motion to Dismiss the Complaint of Plaintiff Keith F. Bell, Ph. D. ("Plaintiff") for failure to state a claim upon which relief can be granted. As set forth below, Liberty's Motion to Dismiss should be granted and Plaintiffs' copyright infringement action should be dismissed with prejudice because Liberty's alleged use of the WIN Passage was, as a matter of law, a fair use.

## INTRODUCTION

In his Complaint, Plaintiff attempts to rely on bare-bones allegations to conceal the fact that the WIN Passage referenced in Paragraph 20 of his Complaint was used by Liberty for an electronic invitation to a one-hour educational roundtable with professors, students, student-athletes, and athletic staff, in conjunction with the Liberty Department of Psychology, for the sole and express purpose of "education, fellowship and transparency" "to establish a platform in which research, collaboration and innovative thought are encouraged to further develop the performance of our student-athletes… [and] to ensure that Liberty University continues to develop and implement strategies that seek to improve student-athletes in mind, body and soul." (*See infra* Exs.

1-2).[1] Plaintiff's allegations in Paragraphs 21-22, in contrast, are so bare-bones they are fatally vague and cannot support any claim for relief. (*See infra*, n.5).

In any event, Liberty's use is unquestionably protected under the fair use doctrine of the Copyright Act because its "purposes [was] criticism, comment, … teaching . . . , scholarship, or research, [and, therefore,] not an infringement of copyright." 17 U.S.C. § 107. In addition to the fact that each and every prong of the fair use analysis under § 107 supports a finding of fair use, as a matter of law, Liberty's alleged use is virtually identical to the fair use of the WIN Passage established in *Bell v. Magna Times, LLC*, 2019 WL 1896579 at *1 (D. Utah Apr. 29, 2019).

In *Magna Times*, Plaintiff filed suit against the *Magna Times* newspaper based on its reporting that a school coach used the WIN Passage as the "theme for [the school's] 2016 football season" at an awards banquet in 2015. *Id.* The *Magna Times* court performed the same fair use analysis required here, using the same works at issue here, and concluded, *inter alia,* that "[t]here [was] no allegation that the football coach's use of the [WIN Passage] was anything but fair use in the education of his student athletes." *Id.* at *4. All fair use factors in *Magna Times* supported a finding of fair use as a matter of law, and the court granted defendants' Rule 12(b)(6) motion to dismiss with prejudice. The same result should follow here.

---

[1] *See, e.g., Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment").

**STATEMENT OF FACTS[2]**

In his Complaint, Plaintiff alleges that he is a sports psychology and performance consultant. (Dkt. 1 at ¶ 7). In 1981, he wrote a 72 page[3] book entitled *Winning Isn't Normal*, and registered the same with the Copyright Office on or about September 21, 1989. (*Id.* at ¶¶ 11-12, Ex. A). Plaintiff alleges that he obtained a separate copyright registration for a short passage in the previously registered publication, which Plaintiff refers to as the "WIN Passage." (*Id.* at ¶¶ 14-15). Plaintiff contends the WIN Passage is a 24 sentence excerpt from his 72 page book, *Winning Isn't Normal*. (*See id.* at ¶ 15 Ex. B). [4]

Plaintiff's copyright registration for the WIN Passage, however, contradicts his allegations, and makes clear that he does not have a second registration for the full, 24 sentence WIN Passage because his registration expressly disclaims and excludes text that was previously registered with his *Winning Isn't Normal* book. (*See, e.g., id.* Ex. C at "Limitations on copyright claim"); *see also* U.S. Copyright Office, Compendium Of U.S. Copyright Office Practices ("Compendium") at §§ 619.11, 621.5 (3rd ed. 2014) (recognizing the Copyright Office generally allows only one registration per work, and "the applicant should disclaim any portion of the work that has been registered before"). Instead, Plaintiff's second registration is limited to *new text* added since his book was published. (*Id.*).

---

[2] Liberty accepts as true the facts in the Complaint solely for purposes of this Motion.

[3] Plaintiff alleges that he offers *Winning Isn't Normal* for sale through Amazon.com. Compl. at ¶ 13. The referenced website, which is incorporated into the Complaint, reflects the fact that Plaintiff's book is 72 pages in length. *See* https://www.amazon.com/Winning-Isnt-Normal%C2%AE-ebook/dp/B00QB7FAKG.

[4] Plaintiff's Complaint intentionally conflates his *Winning Isn't Normal* book and the WIN Passage referring to them collectively as the "Infringed Work." Compl. at ¶ 14. Plaintiff presumably is taking this approach because he is hoping to have it both ways by formally pointing to the book copyright, while making infringement allegations based solely on the WIN Passage.

Plaintiff, however, fails to identify or plead the "new material" or text that is purportedly covered by his second registration and excluded from his *Winning Isn't Normal* registration. Regardless, it is clear the WIN Passage is "just a small portion of a much more substantial work that has been widely published for over thirty-five years." *Magna Times, LLC*, 2019 WL 1896579 at *5. Nonetheless, Plaintiff attempts to allege, in a conclusory fashion, that his short, 24 sentence WIN Passage is the "heart" of his 72 page book, without any factual allegations to plausibly support such a conclusion. (Dkt. 1 at ¶ 14).

Plaintiff's allegations against Liberty are thread-bare. Plaintiff simply alleges that Liberty "sometime trading as Liberty Sports Performance, posted Plaintiff's WIN [P]assage on or about January 14, 2017," Liberty's "copying of Plaintiff's WIN [P]assage has been copied by at least one or more coaches in the employ of Defendant," and "[o]n information and belief, Defendant copied Plaintiff's WIN [P]assage on a website and/or social media accounts associated with Defendant, including Liberty Sports Performance." (*Id.* at ¶¶ 20-22). Plaintiff does not, however, specify whether the alleged copying and use alleged in Paragraphs 21 and 22 are mere references to the use specifically identified in Paragraph 20 or a different use. Paragraphs 21 and 22, therefore, are fatally vague and do not apprise Liberty of a different use than that asserted in Paragraph 20.

Although Plaintiff elected not to attach a copy of the January 2017 publication by Liberty Sports Performance ("LSP"), Plaintiff reasonably identifies and incorporates this publication in his Complaint, and the Court is entitled to consider the same. *See infra* at § I (Standard of Review). A copy of the January 2017 publication is attached hereto as **Exhibit 1**.[5]

---

[5] Plaintiff's Complaint likewise fails to attach documents supporting allegations of copying in Paragraphs 21-22 of his Complaint and fails to indicate whether the purported "copy[ing] by at least one or more coaches in the employ of Defendant" or the "WIN passage on a website and/or social media accounts associated with Defendant, including those of Liberty Sports Performance" are mere references to the same Roundtable Invitation or to some unidentified publication. Thus,

Exhibit 1 is an invitation to "students and student-athletes" for a "Sports Performance Roundtable" in conjunction with the Liberty Psychology Department for "Sports Psych Night" to discuss "The Psychological Impact of Sports on Athletes" from 6:30 pm to 7:30pm on January 24, 2017 (the "Roundtable Invitation"). (Ex. 1 at 1-2).[6] The Roundtable Invitation identifies Liberty Professors and Liberty Athletic staff that will serve as the "Expert Panel" and concludes by stating: "Looking forward to an evening of ***education,*** *fellowship and transparency*." (Ex. 1 at 8) (emphasis added). The Roundtable Invitation further identifies the purpose of LSP, stating:

> The purpose of the Liberty Sports Performance team is to establish a platform in which ***research, collaboration and innovative thought are encouraged to further develop*** the performance of our ***student-athletes***. This integrated team exists to ensure that Liberty University continues to develop and implement strategies that seek to ***improve student-athletes in mind, body and soul***.

*See also* (Ex. 2) (stating: "The event will go over the Liberty Sports Performance model that includes an athletes' mindset and the culture they are a part of. This goes into the sleeping habits of athletes and their nutrition on a daily basis. ***The event is designed [as] a platform for research, collaboration and innovation in order to enhance the development of Liberty's student-athletes***. The panel will conclude members from Liberty's Sports Performance staff as well as others from Liberty University.") (emphasis added).

As discussed below, it is clear from the factually supported allegations that Liberty's use of the WIN Passage is a fair use under 17 U.S.C. § 107, and Liberty cannot be liable for copyright infringement as a matter of law.

---

to the extent Paragraphs 21-22 are intended to assert a claim based on any use other than that alleged in Paragraph 20, the Complaint fails to allege facts to plausibly support such a claim, and fails to put Liberty on notice of any purportedly infringing use beyond that stated in Paragraph 20.

[6] *See also* Athletics Joins Liberty Psychology Department to Host Sports Psych Night, *https://www.liberty.edu/flames/index.cfm?PID=36963&newsID=17801*, a copy of which is attached hereto as **Exhibit 2**.

## ARGUMENT & AUTHORITIES

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint ... and a plaintiff's well-pleaded allegations are taken as true and ... viewed in the light most favorable to the plaintiff." *Starks v. Abbasi*, 2009 WL 2959747 at * 1 (E.D. Va. 2009) (quoting *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

When testing the legal sufficiency of a plaintiff's complaint, defendant may supply and the court may consider all pertinent documents referred to in plaintiff's complaint. *See, e.g., Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment"); *Halzack Watkins v. Ed. Credit Mgmt. Corp.*, 2011 WL 2015479, *1 n.1 (E.D. Va. 2011); *accord Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

A complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003). Thus, pleading in the form of legal conclusions is insufficient, and courts are not bound to accept conclusory allegations as true. *Marks v. Crawford*, 882 F.Supp. 530, 532 (E.D. Va. 1993).

Moreover, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

**II. Liberty's Alleged Use of WIN Passage is Protected Fair Use as a Matter of Law**

Section 107 of the Copyright Act provides that: "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Section 107 then provides four, nonexclusive factors that courts may consider in making a "fair use" determination:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

As the Supreme Court has recognized, the fair use doctrine provides "considerable latitude for scholarship and comment." *Eldred v. Ashcroft*, 537 U.S. 186, 220 (2003) (internal citation quotation and citation omitted). Indeed, "the rationale for the fair use doctrine is that, when the free flow of information is sufficiently vital, it should override the copyright holder's interest in the exclusive control of the work." *Advanced Computer Serv. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 (E.D. Va. 1994).

Even without a detailed analysis of the fair use factors, it is readily apparent that Liberty's Roundtable Invitation is "for purposes such as comment, . . . teaching . . . ,

scholarship, or research, [and] is not an infringement of copyright" as a matter of law. *See* 17 U.S.C. § 107. The invitation is directed to "students and student-athletes" for a "Sports Performance Roundtable" with the Liberty Department of Psychology for a one-hour, academic discussion described as "an evening of ***education, fellowship and transparency***." (Ex. 1 at 1-2, 8) (emphasis added). The Roundtable was led by Liberty Professors and Athletic staff that served as an "Expert Panel" for LSP. (Ex. 1 at 8; Ex. 2). And, the purpose of LSP, as stated in the Roundtable Invitation, was:

> [T]o establish a platform in which ***research, collaboration and innovative thought are encouraged to further develop*** the performance of our ***student-athletes***. This integrated team exists to ensure that Liberty University continues to develop and implement strategies that seek to ***improve student-athletes in mind, body and soul***.

*See also* (Ex. 2) (stating: "The event is designed [as] a platform for ***research, collaboration and innovation in order to enhance the development of Liberty's student-athletes***.") (emphasis added). In summary, this case presents students and professors engaged in expressly educational discourse in a teaching format known as a roundtable with an express purpose of research for the development of students, a process itself known as scholarship. Liberty's challenged use of Plaintiff's work, therefore, is fair use as a matter of law.[7]

---

[7] As discussed in the Statement of Facts above, Plaintiff fails to attach documents supporting his allegations of copying in Paragraphs 21-22 of his Complaint and fails to indicate whether the purported "copy[ing] by at least one or more coaches in the employ of Defendant" or the "WIN passage on a website and/or social media accounts associated with Defendant, including those of Liberty Sports Performance" are mere references to the Roundtable Invitation incorporated by reference or to some other unidentified publication. To the extent Paragraphs 21-22 were intended to refer to a use other than that alleged in Paragraph 20, they are fatally vague. *See, e.g., Gillespie v. Marriott Int'l, Inc.,* 2015 U.S. Dist. LEXIS 64801, at *8 (E.D. Va. 2015) (To satisfy Rule 8 pleading standards, the complaint must "give [each] defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal citation omitted). "In *Twombly*, the Supreme Court held that a complaint, to be minimally compliant with the pleading requirements of Rule 8(a)(2), must set forth 'enough factual matter (taken as true) to suggest' a cognizable cause of action." *Palmer v. Oakland Farms, Inc.*, 2010 WL 2605179 at *3 (W.D. Va. 2010) (citing *Twombly* 550 U.S. at 556) (footnote omitted). Thus, for purposes of Liberty's Rule 12(b)(6) motion, the Court

### III.  A Nearly Identical Case Filed By Plaintiff Was Dismissed as Protected Fair Use on a Rule 12(b)(6) Motion, and the Same Result Should Follow Here

Dismissal of Plaintiff's Complaint pursuant to Liberty's Rule 12(b)(6) Motion asserting protected and non-actionable fair use is not only proper, it is in line with a recent, nearly identical case filed by Plaintiff against the *Magna Times* newspaper based on its reporting that a school coach used the WIN Passage as the "theme for [the school's] 2016 football season" at an awards banquet in 2015. *Bell v. Magna Times, LLC*, No. 2:18CV497DAK, 2019 WL 1896579 at *1 (D. Utah Apr. 29, 2019) (dismissing complaint with prejudice on a Rule 12(b)(6) motion because defendants' use was protected fair use under Section 107 of the Copyright Act), attached hereto as **Exhibit 3**; *see also* § 6:76. Exploiting copyrights—Recourse against infringement—Defenses to copyright infringement—Fair use and other limitations on exclusive rights, 2 Pat. L. Fundamentals § 6:76 (2d ed.) ("The use of a brief book excerpt published with attribution in a local newspaper reporting on that passage's public adoption by the local high school football coach as the theme for the following year's football season was held to be a fair use." (citing *Bell v. Magna Times, LLC*, 2019 WL 1896579, at *3–5 (D. Utah 2019)).[8]

---

should disregard Paragraphs 21-22 because they are not reasonably supported by factual allegations. *See, e.g., id.*; *Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758, 761 (E.D. Va. 2005) ("Courts need not credit … allegations that are not reasonably supported by factual allegations").

[8] "Increasingly, courts have considered fair use on a Rule 12(b)(6) motion to dismiss for failure to state a claim." William F. Patry, Patry on Fair Use § 7:5 (2017); *see Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 530 (9th Cir. 2008) (affirming dismissal of declaratory judgment action based on fair use); *Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986) (finding fair use); *Lombardo v. Dr. Seuss Enterps., L.*P, 2017 WL 4129643, at *2-3 (S.D.N.Y. 2017) (granting motion for judgment on the pleadings on issue of fair use); *Denison v. Larkin*, 64 F. Supp. 3d 1127 (N.D. Ill. 2014) (dismissing copyright infringement claim for failure to state a claim based on fair use); *Savage v. Council on American—Islamic Relations, Inc.*, 2008 WL 2951281, (ND. Cal. 2008) (dismissing copyright claim on a motion to dismiss because copying was protected fair use); *Righthaven LLC v. Realty One Grp., Inc.*, 2010 WL 4115413, at *2 (D. Nev. 2010) (dismissing copyright claim on a motion to dismiss on the basis of a fair use defense).

*Magna Times*, therefore, provides the appropriate lens to assess each of the fair use factors, and further supports dismissal of Plaintiff's Complaint in this action. The facts on record are "sufficient to evaluate each of the [fair use] statutory factors" *Harper & Row*, 471 U.S. at 560, and there is no question that Liberty's alleged use of the WIN Passage was a fair use. *Magna Times,* 2019 WL 1896579 at *1. Any argument to the contrary is unsupported and implausible.

### 1. The Purpose and Character of the Use

When dismissing Plaintiff's copyright infringement claim in *Magna Times*, the District of Utah recognized that, as here, "[t]here [was] no allegation that the football coach's use of the [WIN Passage] was anything but fair use in the education of his student athletes." *Id.* at *4. The court then held that the first fair use factor, "*the purpose and character, including whether such use is of a commercial nature or is for nonprofit educational purposes*," supported fair use, because "there [was] no allegation of [] commercial [exploitation]" and the work fell within the fair use categories expressly protected in the preamble to Section 107 of the Copyright Act. *Id.*

The same conclusion follows here. The Roundtable Invitation was expressly intended for students' and student-athletes' "education [and] fellowship," the Roundtable was conducted in collaboration with the Liberty Department of Psychology, and the express purpose was "to establish a platform in which research, collaboration and innovative thought are encouraged to further develop the performance of [Liberty's] student-athletes… [and] to ensure that Liberty University continues to develop and implement strategies that seek to improve student-athletes in mind, body and soul." (Exs. 1-2). According to the invitation, attendees were welcomed with no admission fee or charge. The Court can take judicial notice that Liberty is a nonprofit educational institution. Education, fellowship and improvement of students via a free roundtable discussion with professors, the Psychology Department and the LSP team is unquestionably a non-

commercial, educational purpose. Those kinds of non-commercial and nonprofit educational activities, "such as criticism, comment, … teaching . . . , scholarship, or research, [are] not an infringement of copyright." 17 U.S.C. § 107. Accordingly, as with *Magna Times*, the purpose and character of the use here is non-commercial and educational.

### 2. The Nature of the Copyrighted Work

With respect to the second factor, "*the nature of the copyrighted work*," the *Magna Times* court held that even though "Bell describes the nature of the copyrighted work in his Amended Complaint as a widely published and successful sports psychology book, published in 1982," the WIN Passage is "just a small portion of a much more substantial work that has been widely published for over thirty-five years." *Magna Times, LLC*, 2019 WL 1896579 at *5. The court, therefore, found that this factor "weighs in favor of fair use." *Id.*

The same conclusion follows here because the court considered the same WIN Passage from the same book, *Winning Isn't Normal*. Further, Plaintiff's WIN Passage purports to be a truthful, accurate and factual summary of psychological principles in the field of sports psychology, and "the Supreme Court has instructed that 'fair use is more likely to be found in factual works than in fictional works." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 640 (4th Cir. 2009) (quoting *Stewart v. Abend*, 496 U.S. 207, 237 (1990)).

### 3. The Amount and Substantiality of the Portion Used

The third fair use factor is the "*amount and substantiality of the portion use in relation to the copyrighted work as a whole*." 17 U.S.C. § 107(3). In *Magna Times*, the court held that "[w]hile [Plaintiff's] copyrighted work is a full-length book, the coach took a small section," namely, the WIN Passage. *Magna Times, LLC*, 2019 WL 1896579 at *5. The court then concluded that because "only a small section of a much larger book" was used, "this factor also weighs in favor of fair use." *Id.*

Although Plaintiff alleges, in a conclusory fashion, that the WIN Passage is the "heart" of his 72 page book, he provides no factual allegations to plausibly support this bald conclusion intended to paraphrase a legal standard for substantial portion. (*See* Dkt. 1 at ¶ 14). Plaintiff's conclusory allegation, therefore, should be disregarded. *See Eplus Tech., Inc.*, 407 F. Supp. 2d at 761 ("Courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations"). Indeed, the WIN Passage reads more like the jacket-summary for the book, designed to entice the reader to purchase the full-length book, rather than the "heart" of the book, or the reason the book would be purchased in the first place. *Cf. Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565 (1985) (finding an excerpts from President Ford's *unpublished* memoirs containing significant new details on the negotiations and considerations surrounding President Nixon's pardon were the heart of the work and impinged President Ford's right of first publication).

As reflected in Exhibit B to the Complaint, the WIN Passage is no more the "heart" of the work than a movie trailer would be for a full-length film. It is far from the "heart" of the work found in *Harper & Row* because it does not contain new, unpublished details that impinge on any right of first publication, only a general synopsis of the principles expounded upon in Plaintiff's 72 page book that has been in publication for more than thirty-five years.

In any event, "[t]here are no absolute rules as to how much of a copyrighted work may be copied and still be considered a fair use." *Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 205 (4th Cir. 1998) (recognizing that even wholesale copying of entire work does not preclude finding of fair use); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1263 (2d Cir. 1986) (finding copying of 4.3% of the words from plaintiff's book in defendant's book was "not incompatible with a finding of fair use."). Instead, "the extent of permissible copying varies with the purpose and character of

the use." *Sundeman*, 142 F.3d at 205 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)).

In *Sundeman*, for example, the Fourth Circuit found that use of an entire copy and the quoting 4-6% of the work at a symposium at the University of Florida by a non-profit organization was appropriate for scholarly criticism and "did not exceed the amount necessary to accomplish these legitimate purposes." *Sundeman*, 142 F.3d at 206. The same is true here.

Even if we assume the WIN Passage consumed a full page of *Winning Isn't Normal*, those 24 sentences would be merely 1.3% of the work. A page or less of a 72 page sports psychology book is thus an insubstantial portion. Further, there can be no dispute that, like defendant in *Sundeman*, Liberty used the work for scholarly and educational purposed in connection with its Roundtable discussion with students and student-athletes "to establish a platform in which research, collaboration and innovative thought are encouraged to further develop the performance of our student-athletes…. [and] to develop and implement strategies that seek to improve student-athletes in mind, body and soul." (*See* Ex. 1). Thus, as in *Magna Times* and *Sundeman*, this factor too supports a finding of fair use.

### 4. Effect on the Potential Market (the "Market Effect" Factor)

The final factor is "*the effect of the use upon the potential market for or value of the copyrighted work*." 17 U.S.C. § 107(4). Significantly, Plaintiff does not allege that Liberty's use had any impact on the potential market for or value of the copyrighted work or that Plaintiff suffered any decline in sales, licenses or assignments as a result of Liberty's use of the WIN Passage in the Roundtable Invitation. (*See generally* Dkt. 1). Rather, as in *Magna Times,* "Bell's allegations against Defendant[] focus almost solely on the lack of authorization." *Magna Times, LLC*, 2019 WL 1896579 at *5. Further, as in *Magna Times*, Liberty's use of the WIN Passage in the Roundtable Invitation was attributed to "Dr. Keith Bell." (Ex. 1 at 6). This reference in

connection with a single roundtable in an academic setting simply cannot have a negative effect on the market or value of Plaintiff's *Winning Isn't Normal* work. Thus, as the *Magna Times* court concluded: "If anything, the small portion of the book quoted in the article acted as an advertisement of Bell's full-length work." *Magna Times, LLC*, 2019 WL 1896579 at *5.

Plaintiff's Complaint fails to allege any negative effect on the market for his copyrighted work as a result of Liberty's alleged use because there was none. Indeed, it appears that the primary economic value that Plaintiff derives from his copyrighted work arises from the copyright infringement lawsuits he threatens or files against unsuspecting educational institutions and others. Over the years, Plaintiff has filed at least 38 lawsuits alleging copyright infringement, many of which resulted in a settlement within a few months after filing. Others, like *Magna Times*, were challenged and dismissed on fair use grounds. *See* PACER Search Results for Keith F. Bell, Ph. D. Copyright Cases attached hereto as **Exhibit 4**.

Many Courts rightfully have expressed concern about Plaintiff's shakedown litigation strategy. As the Southern District of New York has recognized:

> Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." Matthew Sag, COPYRIGHT TROLLING, AN EMPIRICAL STUDY, 100 Iowa L.Rev. 1105, 1108 (2015). "The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id*.

*Malibu Media, LLC v. Doe*, 2015 WL 4092417, at *2 (S.D. N.Y. 2015).

Litigation is not a commercial market contemplated by the Copyright Act. "Congress plainly did not intend to preserve a market for copyright litigation when it enacted the Copyright Act so any impairment of the litigation market for plaintiff's [copyrighted work] has no bearing

on this analysis." *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708, 719, n. 13 (E.D. Va. 2018) (citing Campbell, 510 U.S. at 591) (considering only "harm cognizable under the Copyright Act in evaluating the market harm in the fourth fair use factor").

Thus, the final factor (like all other factors) supports a finding of fair use, and as in Magna Times, this court should find Liberty's use was fair and protected, and dismiss Plaintiff's complaint with prejudice pursuant to Rule 12(b)(6). *Id.*

## CONCLUSION

For the forgoing reasons, Liberty respectfully requests that the Court grant Liberty's Motion to Dismiss, dismiss Plaintiff's Complaint with prejudice, and award Liberty such other relief as is just and proper.

Dated: January 30, 2020

Respectfully Submitted,

LIBERTY UNIVERSITY, INC.

By: /s/ Joshua F. P. Long

Joshua F. P. Long (VSB #65684)
jlong@woodsrogers.com
Joshua R. Treece (VSB #79149)
jtreece@woodsrogers.com
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540)983-7725
Fax: (540)983-7711

*Counsel for Defendant Liberty University, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2020, a true and correct copy of the above and foregoing was filed with the CM/ECF system which shall send a copy of these pleadings to all counsel of record.

/s/ Joshua F. P. Long